## Lower Merion Township Commissioners' Petition.

*Parker S. Williams* and *Franklin L. Wright*, for petition.
*High, Dettra & Swartz*, contra.

KNIGHT, J., May 29, 1930.—By ordinance duly approved May 18, 1927, the Board of Commissioners of Lower Merion Township authorized the acquisition of certain premises in the West Branch Indian Creek watershed for the erection of a sewer pump station, and .provided for the construction of main and force main sewers in said watershed, the cost thereof to be assessed upon the properties accommodated or benefited.

In conformity with the authority conferred by the above ordinance, the township constructed the sewer. Settlements were made with all of the property owners, with the exception of Le Roy P. Leas, whereupon a jury of view was appointed, who assessed the land of Mr. Leas with benefits in the sum of $819.11, representing the cost of the sewer laid across the Leas property. Exceptions to the report have been filed by Mr. Leas, and the matter is now before the court on these exceptions.

No objection is made to the amount of the assessment, nor to the procedure. The exceptant claims, however, that his property cannot be charged with the cost of the sewer above mentioned, because his land has heretofore been assessed for the cost of a sewer in Haverford Road.

In order to understand the question here presented, it is necessary to have in mind a clear picture of the Leas property. It is rather hard to describe this land in words, and we will not attempt it, as a draft of the property is attached to the report of the jury of view. This draft shows that the estate of Mr. Leas has a frontage of 229.12 feet on Haverford Road. In the bed of this road, along this frontage, there is a public sanitary sewer, which was laid in 1926, and for which Mr. Leas was assessed and paid benefits. From Haverford Road the exceptant's land runs in the shape of a funnel, with its base on said road, northeasterly to a point 435.23 feet from the middle of Haverford Road, from which point it widens out in both directions. The property contains nearly sixteen acres of land, and the buildings are located about 650 feet from Haverford Road. The sewer in question, where it crosses the Leas property, runs nearly parallel with Haverford Road, and about 550 feet distant therefrom. It is not laid in the bed of any street across the land of Mr. Leas.

The exceptant sums up his contention by citing the following extract from the opinion of the lower court in Philadelphia v. Meighan, 27 Pa. Superior Ct. 160 (1905):

"The general principle of law is that where a property is first benefited in kind by a municipal improvement it is assessable therefor, but where it has once enjoyed the particular kind of improvement the property is not assessable for a second improvement of the same character, even though the latter may differ in degree and may be to the apparent material benefit of such property."

This is stating the rule in its broadest terms and in the light most favorable to the contention of the exceptant.

An examination of all the cases that have been brought to our attention in which the principle has been applied discloses that, with the exception of the case above cited, they have to do with the reconstruction, rebuilding or replacing of municipal improvements, and not with new construction. In Philadelphia v. Meighan, supra, the sewer was laid in a city street and was paid for by assessment; later, the city put in a second sewer in the same street, and it was held that the abutting property owner could not be assessed for the cost of the additional sewer. Both the court below and the appellate tribunal held that the second sewer was simply an enlargement of the sewer capacity or facilities of the abutting owner—a duplicate sewer. In effect, the building of the second sewer on the same street was no different than a reconstruction or change of the first one. Very different are the facts in this case, where the second sewer is 550 feet from the first and where the jury of view has found that by reason of the topography and nature of the land it is impractical for Mr. Leas to connect his buildings with the first sewer, and that the second is much nearer and readily available.

The distinction between Philadelphia v. Meighan and the case at hand is very broad. Reverting again to the principle as stated in the Meighan case, it will be noted that the "property" involved was located on a built-up city street, and the language employed by the court must be held to apply to such "properties." We have a number of large estates in Montgomery County that abut on public roads a mile apart, and certainly no one would contend that an owner would be relieved from the payment of a sewer benefit because he had already paid such a benefit for another sewer on his "property" a mile away. The burden of all the cases is that it is the abutting properties only that are subject to assessment, and, hence, relieved from a second assessment; and in considering what is "abutting," the courts have restricted the term to land which immediately abuts on the municipal improvement: Park Avenue Sewers, 169 Pa. 433.

In Michener v. Philadelphia, 118 Pa. 535, the property involved was a lot in the City of Philadelphia which abutted on three streets. Sewers were laid in two of the streets and the lot assessed for the benefits. The city then laid a sewer in the third street, and the Supreme Court held the lot liable for benefits although the front on the third street was not available for building purposes.

Considering the shape and size of the Leas land, it would be stretching the principle too far to hold that the whole of the exceptant's sixteen acres abutted on Haverford Road within the meaning of the rule as laid down in Hammett v. Philadelphia, 65 Pa. 146, Philadelphia v. Meighan, supra, and kindred cases. Without prolonging the discussion, we are of the opinion that the sewer in question, constructed over the Leas property 550 feet from the Haverford Road sewer, is not in contemplation of the law a mere duplication of the former sewer, and, hence, not within the rule as stated in Phila-

74

delphia *v.* Meighan. It follows that the exceptions to the report of the jury of view must be dismissed and the report confirmed.

And now, May 29, 1930, the exceptions are dismissed, and the report of the jury of view is confirmed absolutely.

From Aaron S. Swartz, Jr., Norristown, Pa.